

**ORDERED in the Southern District of Florida on October 05, 2010.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

In re:

BISCAYNE BAY LOFTS, LLC,

  Debtor.
_____/

Case No. 10-13020-BKC-AJC
Chapter 7

### ORDER CONFIRMING SALE OF ESTATE'S INTEREST IN 40 UNITS AT THE ONYX ON THE BAY CONDOMINIUM ("HYPERION UNITS" OR THE "PROJECT") TO HYPERION ONYX PARTNERS, LLC OR ITS NOMINEE

THIS CAUSE came before the Court on October 5, 2010 at 3:00 p.m. pursuant to paragraph 8 of the *Order (I) Approving Bid Procedures; (II) Approving of Motion For Sale of Property Free and Clear of Liens, Claims and Encumbrances Other Than Real Estate Taxes; and (III) Scheduling Auction Date and Final Hearing* (D.E. 134) ("Bid Procedures Order")[1] and

---

[1] Defined terms shall have the same meanings as ascribed in the Bid Procedures Order; the *Settlement Among the Chapter 7 Trustee for the Debtor, Biscayne Bay Lofts, LLC, Hyperion Onyx Partners, LLC, MK Contractors, LLC and Onyx on the Bay Condominium Association* ("Settlement Agreement") (D.E. # 91); *Order Granting Trustee's Motion to Approve Settlement Between Chapter 7 Trustee, MK Contractors, LLC, Hyperion Onyx Partners, LLC and Onyx on the Bay Condominium Association, Inc.* (D.E.132) ("Settlement Order") and the *Order Granting Trustee's Motion to Approve Settlement Agreement Between Chapter 7 Trustee, MK Contractors, LLC, Hyperion*

{M2979142;1}

to confirm the sale of the Debtor's interest in the 40 so-called Hyperion Units [2], as described in more detail in the *Motion for (I) Approval of Bidding Procedures; (II) Approval of Motion For Sale of Property Free and Clear of Liens, Claims and Encumbrances Other Than Real Estate Taxes; and (III) Scheduling Final Hearing* (the "Bid Procedures Motion") (D.E. # 134). Upon the evidence submitted in support of the confirmation of the sale (collectively, the "Evidence"); due and proper notice of the Sale (as defined below) and the Sale Hearing (as defined below) having been given to all parties entitled thereto, as evidenced by the certificates of service filed with this Court (D.E.#'s 136, 140 and 158)); and with a hearing having been held to consider approval of the Bid Procedures on September 14, 2010 at 2:30 p.m., at which time all parties in interest were afforded an opportunity to be heard to be heard; and upon all of the proceedings had before this Court in the case, of which the Court has institutional knowledge and also takes judicial notice and the evidence received in connection with the Trustee's efforts to confirm the sale described herein;

**NOW THEREFORE**, upon consideration of the proposed sale, a review of the Court files, the argument and presentation of counsel, a review of all of the evidence proffered or adduced at, objections filed in connection with, and the arguments made at the Sale Hearing, the

---

*Onyx Partners, LLC and the Chapter 11 Estate of Onxy on the Bay Condominium Association, Inc.* ("Settlement Order") D.E.# 132)

[2] The Hyperion Units are specifically described as units 205, 206, 306, 406, 505, 506, 603, 604, 605, 606, 706, 803, 901, 1001, 1101, 1201, 1205, 1401, 1405, 1505, 1701, 1705, 1801, 1805, 1905, 2001, 2005, 2101, 2102, 2105, 2201, 2205, 2401, 2501, 2601, 2605, PHI3, PHI4, PHI1, PHI2 . In the event of any discrepancy between the identification of the Hyperion Units herein and the Mortgage, the Mortgage shall control. In addition, the Project shall also include:

    (i)    all limited common elements;
    (ii)    all personal property located in the units (including but not limited to appliances and fixtures);
    (iii)    56 unassigned/unsold parking spaces for the units which the Purchaser may freely assign, provide that there shall be no cost to the Association;
    (iv)    the unassigned/unsold 15 storage spaces for the Units;
    (v)    The Association has leased Unit 706. The HOA shall assign to the Purchaser the Lease including the security deposit and subsequent rent proceeds, if any.

Court having carefully examined the demeanor and candor of the witnesses proffered at the Sale Hearing giving rise to this Sale Order, and with the Court otherwise being duly advised in the premise, good cause appearing therefore;

### IT IS FOUND AND DETERMINED[3] THAT:

1. This Court has jurisdiction to hear and adjudicate the Sale Motion pursuant to 28 U.S.C. Sections 157 and 1334.

2. Determination of the Sale Motion is a core proceeding under 28 U.S.C. Sections 157 (b)(2)(A) and (N). The statutory predicates for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure (the Bankruptcy Rules") 2002, and 6004.

3. Proper, timely, adequate and sufficient notice of the Bid Procedures Order, the Sale Hearing, the Auction, and the transactions contemplated thereby have been provided in accordance with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and the Bid Procedures Order, and no other or further notice of the Sale Motion, the hearing held on September 14, 2010 on the Bid Procedures or the entry of this Order (the "Sale Order") is required. The solicitations by the Trustee and his advisors and Hyperion in connection with the sale of the Project were adequate and reasonable to obtain the highest and best price for the Project.

4. On or about September 15, 2010, Hyperion served by CM/ECF (by pre-paid first class U.S. Mail, as may be the case) a copy of the Bid Procedures Order upon: (a) all parties who claim interests in or liens upon the Lease; (b) all parties on the Master Service List; (c) all entities solicited for an expression of interest in the Project subsequent to the Trustee's

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Rule 7052. *See, Grand Union Co.*, 2000 Bankr. Lexis 1710 (Bankr. N.J. 2000) and *In re American Family Enterprises, Inc.*, 265 B.R. 377 (Bankr. N.J. 2000).

appointment and who expressed a *bona fide* interest (in the Trustee's reasonable business judgment) in a transaction for the Project; (d) all governmental taxing authorities who have or as a result of the sale of the Project may have claims, contingent or otherwise, against the Debtor; and (e) to the extent not included on the Master Service List, all creditors and parties who have filed notices of appearance in this case. A reasonable and proper opportunity to object or to be heard regarding the Bid Procedures, the Auction and the Sale Hearing as presented in the Bid Procedures Order has been afforded to all persons and entities as set forth hereinabove.

5. As demonstrated by: (i) the testimony and other evidence proffered at the Sale Hearing; and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee has marketed the Project and conducted the sale process in compliance with the Bid Procedures Order, and in a manner that was non-collusive and commercially reasonable.

6. The Trustee: (i) has full power and authority to execute the deed, bill of sale and all other documents contemplated thereby and as otherwise reasonably required to implement the transaction, and the sale of the Project by the Trustee has been duly and validly authorized by all necessary action of the Trustee on behalf of the Debtor; (ii) has all of the power and authority necessary to consummate the transactions contemplated under the Settlement Agreement and this Sale Order; and (iii) has taken all action necessary to authorize and approve the sale and the consummation by the Trustee of the transactions contemplated thereby. No further or other consents or approvals are required to consummate all such transactions.

7. The Settlement Agreement, the Bid Procedures and the Sale Motion reflect the Trustee's sound business judgment and constitutes a proper exercise of the Trustee's fiduciary duties.

8. The Trustee has demonstrated compelling circumstances for the sale of the Project outside of the ordinary course of the Debtor's business (the "Sale") pursuant to 11 U.S.C. Section 363(b) based upon, among other things:

> The Trustee and Hyperion diligently and in good faith marketed the Project to secure the highest and best offer therefore by, among other things, the wide distribution of the Bid Procedures Order and Settlement Agreement and Order to all of the individuals contacted who expressed an interest in the Project to the Trustee and Hyperion, which exceed over a dozen individuals or entities, as well as the entire expanded service list consisting of some 250 interested parties, publishing numerous advertisements in the *Miami Herald,* providing ready access to relevant document via an FTP site, responding to specific inquiries and by making tours of the Project available to numerous interested parties.

9. Approval of the transactions contemplated thereby, is in the best interest of the Estate and its creditors. Good and sufficient business justification for consummating the sale pursuant to section 363(b) of the Bankruptcy Code has been established in that, among other things: (i) the Purchaser has made a substantial offer to acquire the Project pursuant to the Settlement Agreement, and the Bid Procedures Order; and (ii) the sale process conducted by the Trustee as required by Section 363 of the Bankruptcy Code has been fair, open and reasonable and has permitted the Purchaser's offer to be tested against higher and better offers.

10. The sale of the Project was negotiated, proposed and entered into by the Trustee and the Purchaser without collusion, in good faith, and from arms-length bargaining positions. The Purchase is a purchaser in good faith of the Project as defined and provided for under Section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the sale of the Project and the transactions contemplated thereby to be avoided under Section 363 (n) of the Bankruptcy Code.

11. Upon entry of this Sale Order and compliance with the requirements to close set forth in the Bid Procedures Order and the Settlement Agreement, the transfer of the Debtor's right title and interests to the Purchaser is in all respect a valid, legal and effective transfer of Project to the Purchaser, free and clear of all liens, claims, interests or encumbrances under section 363(f) of the Bankruptcy Code, with all such liens, claims, interests or encumbrances (other than real and personal taxes) to attach to the proceeds of the Sale in excess of the secured claim of Hyperion[4], if any, in their order of priority and with the same validity as if the Sale had not consummated.

12. Consummation of the Sale does not and will not give rise to any claims by the Purchaser of any kind or nature, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising of or against the Debtor, the estate or the Trustee by reasons of such transfer under the laws of the United States, any state, territory or possession thereof, or the District of Columbia applicable to such transactions.

13. The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Project, to (i) be the successor of the Debtor; (ii) a successor developer; (ii) have, *de facto* or otherwise, merged with or into the Debtor, or (iv) be a mere continuation or a substantial continuation of the Debtor or for payment of any benefit(s) accruing to the Debtor.

14. The relief requested in the Sale Motion, including the approval of the Sale, is in the best interest of the Debtor, its creditors and the estate.

**NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

A. The Sale is confirmed.

---

[4] The Purchaser was authorized to credit bid up to the maximum amount of $12.5 million, and committed to opening the bidding with a credit bid of $7.0 million. The claim of Hyperion is fixed at approximately $23 million plus certain other fees, costs advances, etc, as more particularly set forth in Par. 19 of the Bid Procedures Order.

B.  The Purchaser is Hyperion Onyx Partners, LLC or its nominee.

C.  The Purchase Price to be paid by the Purchaser for the Project is in the amount of $7.0 million, by authorized credit bid, which shall be deemed (i) to constitute sufficient consideration under the Bankruptcy Code; and (ii) is sufficient to support a finding that the Sale may not be avoided under Section 363(n) of the Bankruptcy Code.

D.  All objections to the Sale or the relief sought by the Trustee in connection therewith, if any, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are deemed overruled on the merits.

E.  The terms and conditions of the Settlement Agreement, the Order Approving same, the Bid Procedures Order are reaffirmed in their entirety (including the *Order Granting Ex Parte Motion For Amendment of Settlement Agreement to Correct Scrivener's Error* (D.E.# 156) are approved in all respects, including, without limitation, Paragraph 4 (q) of the Settlement Agreement which obligates Hyperion to release the $250,000 professional fee carve out escrow to the Trustee (and not the estate) upon transfer of the title to the Hyperion Units, and Paragraph 4 (d) which obligates Hyperion to secure its obligations to MK under the Settlement Agreement with the grant of a lien in escrow (to be negotiated at the earliest practicable date) of twenty (20) of the forty (40) Units, and the Sale is approved and confirmed in all respects and authorized and directed under section 363(b) of the Bankruptcy Code. The Units subject of the MK lien are identified in Exhibit "A" hereto attached.

F.  Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized, directed and empowered to fully assume, perform under, consummate and implement the sale and to execute all additional instruments and documents that may reasonably be necessary or desirable to effectuate the spirit, letter and intention of the sale and the transactions contemplated

thereby, and to take all further actions as may be reasonably requested for the purposes of assigning, transferring, conveying and conferring to the Purchaser the Project, including all applicable personal property, or as may be necessary or appropriate to the performance of the Trustee's obligations as contemplated in this Order.

G.  Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Project to the Purchaser under the terms of the this Sale Order is and shall be free and clear of all liens, claims, interests or encumbrances of every kind and nature, and such liens, claims, interests or encumbrances, if any, (other than real and personal taxes) shall attach to the proceeds of the Sale pending further order of this Court.

H.  Except as may be provided in this Sale Order, all persons and entities, including but not limited to the Fee Owners, governmental, tax and regulatory authorities, lenders, trade and other creditors holding interests or claims of any kind or nature whatsoever against the Debtor or the Project (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with or in any way relating to, the Debtor, the Project or the operations of the Debtor's business prior to the Closing (the "Closing Date"), or the transfer of the Project to the Purchaser, are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property or the Project, such persons' or entities' interests or claims.[5]

I.  On or after the Closing Date, the Debtor's creditors (other than applicable taxing authorities) are directed to execute such documents and take all such action as may necessary to release their liens on or claims, if any, against the Project, as such liens and claims may have

---

[5] This protection is in addition to and not in substitution of the Bar Orders contained in the Settlement Order previously entered by this Court on August 23, 2010.

{M2979142;1}                                8

been recorded or otherwise exist, and without limiting the generality of the foregoing, such creditors or parties in interest are directed to execute, deliver and file for record and otherwise all necessary termination statements, discharges or releases and such other documents and instruments as may be reasonably required by the Trustee or the Purchaser to effectuate the foregoing, provided that the failure to do so will not effect the validity or enforceability of the preceding paragraph H, above.

      J.      This Sale Order: (a) is and shall be effective as a determination that, on the Closing Date, all liens, claims, interests or encumbrances existing against the Project before the Closing Date, other than tax liens, have been unconditionally released, discharged and terminated (with such liens, claims, interests and encumbrances to attach to the proceeds of the Sale, to the extent applicable or to continue in the Debtor's other assets, if any, that do not comprise a part of the corpus of the Sale, as provided for herein), and that the conveyance of the Project has been effected; and (b) is and shall be binding upon and govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, registrars of deed, registrars of patent, trademark or other intellectual property, local, state and federal regulatory boards, administrative agencies, governmental departments, secretaries of federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their offices, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Project.

      K.      If any person having filed financing statements or other documents or agreements evidencing liens, claims, interests or encumbrances against the Project (other than applicable taxing authorities) shall not have delivered to the Trustee before the Closing Date, in proper form

for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens or other interests that the person or entity has with respect to the Project, the Trustee or the Purchaser are hereby authorized and directed to execute and file such statements, instruments, releases and other documents for and in the stead of the person or entity with respect to the Project.

L. This Court retains jurisdiction to (i) enforce and implement the terms and provisions of the Sale, all amendments thereto, any waivers thereunder, and of any agreements executed in connection therewith; (ii) compel delivery of the right, title and interest in the Project to the Purchaser; (iii) compel delivery of the Purchase Price and all adjustments to the Purchase Price, if any; (iv) resolve any disputes, controversies or claims arising out of or relating to the sale of the Project; and (v) interpret, implement and enforce the provisions of this Sale Order.

M. Nothing contained in any orders previously entered in this case shall conflict with or derogate from the provisions this Sale Order. No provision of this Sale Order shall be released or be construed to release the Trustee or the Purchaser from any obligations under the Settlement Agreement.

N. The Purchaser is a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded by such section. Without limiting the foregoing, in the absence of a stay pending appeal, if the Purchaser elects or is required to close at any time after the entry of this Sale Order, then the Purchaser shall be entitled to the protections of section 363(m) of the Bankruptcy Code if this Sale Order or any authorization contained herein is reversed or modified on appeal.

O. The Trustee or the Purchaser are entitled to submit to this Court a form of Order which will specifically invalidate the pre-petition, invalid, unauthorized and unaccepted transfer

by the Debtor of 33 of the Hyperion Units to Hyperion, which Order, once filed in the Land Records will render such deed null and void and without any force or effect.

P.   The terms and provisions of the Settlement Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon the Debtor, its creditors and its estate, the Purchaser and any affiliates or assignees, successors or affected third parties, including all parties asserting a lien or claim against or interest in the Debtor's estate or the Project to be sold to the Purchaser pursuant to this Order, including without limitation, the individual unit owners of the 78 units that have been sold and are occupied. The transactions contemplated thereby shall be enforceable by specific performance against and shall be binding upon and not subject to rejection or avoidance by the Trustee.

Q.   This Order and the rights and obligations set forth herein shall survive any conversion or dismissal of the bankruptcy case and this Court shall retain jurisdiction as set forth above.

R.   The failure to specifically include any particular provisions of the Settlement Agreement in this Sale Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Sale Order and all related agreement, documents, instruments and actions be approved in their entirety.

S.   The Sale Order and the Settlement Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties themselves by written agreement in accordance with the terms thereof without further order of this Court, provided such modification, amendment or supplement is not material.

T.   **As provided in Bankruptcy Rule 6004(h), this Sale Order shall be effective and enforceable immediately upon entry and the fourteen-day stay is waived.**

# # #

<u>Submitted by:</u>

James Harris Fierberg, Esq.
Akerman Senterfitt
One Southeast Third Avenue
Miami, FL 33131
Tel: 305.982.5678
Fax: 305.374.5095
Email: james.fierberg@akerman.com

Copies to:

James Harris Fierberg, Esq.

*(Attorney Fierberg is directed to mail a conformed copy of this Order, immediately upon receipt, to all parties in interest.)*

# EXHIBIT "A"
# DESIGNATED UNITS FOR MK LIEN

Units 205, 406, 506, 603, 604, 606, 706, 1201, 1401, 1505, 1701, 1705, 801, 1905, 2105, 401, 2703, 2704, 2801 and 2802

{M2979142;1}                                    13